



## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

ONIKEPE ADEGBOLA, M.D., Ph.D        :

          Plaintiff        :   CIVIL ACTION NO.:    **17**    **2918**

       v.        :

         :   JURY TRIAL DEMANDED

QUEST DIAGNOSTICS, INC.        :

         and        :

QUINTILESIMS, formerly known as QUINTILES   :

         and        :

Q2 SOLUTIONS,        :
a QUINTILES QUEST JOINT VENTURE        :

         and        :

TERRY BURKE        :

         and        :

CHRISTOPHER FIKRY, M.D.        :

         Defendants        :



---

## <u>COMPLAINT</u>

Plaintiff, Onikepe Adegbola, M.D., Ph.D, by and through her undersigned counsel, the Gallagher Law Group, P.C., file this Complaint against defendants, Quest Diagnostics, Inc., QuintilesIMS, formerly known as Quintiles, Q2 Solutions, a Quintiles Quest Joint Venture, Terry Burke and Christopher Fikry, M.D., and in support thereof avers as follows:

### PARTIES

1. Plaintiff, Onikepe Adegbola, M.D., Ph.D., is an adult individual and resident of the Commonwealth of Pennsylvania residing at 2605 Bridle Path Road, East Norriton, PA 19403.

2.      Defendant, Quest Diagnostics, Inc. ("Quest"), is upon information and belief a for-profit business entity organized and/or existing pursuant to the laws of the Commonwealth of Pennsylvania with its principal place of business at 10441 University Center Drive, Tampa, FL 33612.

3.      Defendant, QuintilesIMS, formerly known as Quintiles ("Quintiles"), is upon information and belief a for-profit business entity organized and/or existing pursuant to the laws of the Commonwealth of Pennsylvania with its principal place of business at Plaza Building 4820 Emperor Boulevard Durham, North Carolina 27703.

4.      On or around March 31, 2015, Quest and Quintiles formed a joint venture "to provide global clinical trials laboratory services."

5.      The jointly formed enterprise self-identifies itself as "Q2 Solutions, a Quintiles Quest Joint Venture."

6.      The Website of the jointly formed enterprise states in pertinent part as follows:

> Fueled by the combined resources of Quintiles and Quest Diagnostics, the Q2 Solutions joint venture was formed in 2015 by combining the best of each parent organizations clinical trials laboratory services capabilities in order to provide greater innovation, quality and value for our customers.
>
> Our global laboratory network combines Quintiles' global scale, clinical trial expertise, and diverse therapeutic experience with Quest Diagnostics' operational, scientific and quality excellence, supply-chain network, and informatics.
>
> This unique combination of capabilities allows us to deliver greater innovation, quality and value for biopharmaceutical customers, and to help our customers bring new medicines to market faster.

7.  Upon formation, Quintiles owned 60% of Q2 Solutions and Quest the remaining 40%.

8.      Defendant, Q2 Solutions, a Quintiles Quest Joint Venture ("Q2 Solutions"), is upon information and belief a for-profit business entity organized and/or existing pursuant to the laws of the

2

Commonwealth of Pennsylvania with its principal place of business in the United States located at 5827 South Miami Blvd Morrisville, NC 27560.

9. Where appropriate, and for simplicity's sake, plaintiff will herein collectively refer to the corporate defendants as "Quest."

10. Terry Burke is an adult individual believed to be a resident of the Commonwealth of Pennsylvania; plaintiff does not know Mr. Burke's home address.

11. Christopher Fikry, M.D. is an adult individual believed to be a resident of the Commonwealth of Pennsylvania; plaintiff does not know Dr. Fikry's home address.

12. Where appropriate, and for simplicity's sake, plaintiff will herein refer to Mr. Burke and Dr. Fikry as "Individual Defendants."

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this matter by its authority to hear cases arising under the laws of the United States, pursuant to 28 U.S.C. §1331 and §1334. This civil action arises under the Constitution and laws of the United States. Plaintiff is alleging a violation of her rights under, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended; Title VII of the Civil Rights Act of 1991, 42 U.S.C. §1981; and 42 U.S.C. § 1981 and § 1985.

14. The Court has jurisdiction over the state law claims set forth herein pursuant to 28 U.S.C. §1367(a), as such claims are closely related to the claims in the action within the Court's original jurisdiction.

15. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b), as a substantial part of the events giving rise to the claims occurred in the Eastern District of Pennsylvania.

3

16.     Plaintiff has exhausted all administrative remedies required as a prerequisite to this action, having dual-filed a Charge of Discrimination/Illegal Retaliation based upon color, national origin, race and sex with EEOC/PHRC in which Quest Diagnostics, Inc. and the Individual Defendants were named as Respondents on November 24, 2015, which was within 180 days of the earliest relevant act of discrimination/retaliation at issue.

17.     EEOC issued a Notice of Right to Sue to plaintiff via mailing to plaintiff from Atlanta on Tuesday March 7, 2017.

18.     Plaintiff received the Right to Sue on Monday, March 13, 2017.

19.     Moreover, more than one-year has passed since the Charge was filed with PHRC.

**ALLEGATIONS OF JOINT EMPLOYER AND/OR SINGLE EMPLOYER LIABILITY**

20.     Quest, Quintiles and Q2 Solutions, together or in combinations with one another, were at times material hereto an integrated, single employer of plaintiff and/or were plaintiff's joint employers, because, *inter alia*:

   a. They followed and enforced similar, if not identical, employee-related practices, policies and procedures;

   b. They merged and/or shared resources utilized for the compensation of employees such as plaintiff and similarly situated colleagues, as well as the development of technology, testing processes, work sites, inventory and equipment;

   c. They share many of the same managers, officers, directors, affiliates, employees, operations and clients; and,

   d. Supervisors, managers and/or officers of each company were involved in material decisions relating to plaintiff's continued employment, job responsibilities and assignments, plaintiff's candidacy for one or more positions which she was not interviewed, considered and/or offered, the retention and/or selection of one or more applicants for positions for which plaintiff was qualified, but for which she was not interviewed, considered and/or hired;

**ALLEGATIONS SUPPORTING INDIVIDUAL LIABILITY**

21.     Defendants Burke and Fikry at all material times exercised operational control over the department(s) and/or divisions within which plaintiff was employed.

4

21.  Plaintiff believes, and therefore avers, that the primary decision-makers with regard to the decision to terminate her were Terry Burke and Dr. Chris Fikry. In their Linked-In profiles, both gentlemen identify themselves as" Executive Director, Global Sales and Marketing Clinical Trials."

22.  Additionally and/or alternatively, defendants Burke and Fikry exercised dominion and control over decisions made by Quest, Quintiles and/or Q2 Solutions as regards the said defendants' employment-related policies and practices within the department and/or division in which plaintiff was employed.

23.  Additionally and/or alternatively, defendants Burke and Fikry were directly involved in the decision to unlawfully terminate plaintiff in August 2015.

24.  Additionally and/or alternatively, defendants Burke and Fikry aided and abetted one or more decisions that directly or indirectly resulted in the unlawful termination of and/or retaliation against plaintiff.

25.  Additionally and/or alternatively, defendants Burke and Fikry aided and abetted one or more decisions that directly or indirectly resulted in plaintiff being replaced by someone who was not a black female from Africa.

26.  Additionally and/or alternatively, defendants Burke and Fikry exercised dominion and control over all decisions made by Quest regarding the terms and conditions of plaintiff's employment that are material hereto.

## FACTUAL BACKGROUND

27.  Plaintiff was hired by Quest in or around May of 2013, and was given the job title "Head of Scientific Affairs."

28.  At the commencement of her employment, there was an express understanding between plaintiff and one or more of the defendants that, in addition to being responsible for

5

quality of operations overall, plaintiff would be provided substantial opportunities to interact directly with clients.

29.     Plaintiff is a Nigerian and speaks English fluently.

30.     Plaintiff speaks English with a relatively heavy accent.

31.     On August 20, 2015, Quest terminated plaintiff's employment, effective September 4, 2015, and offered her a Separation Agreement providing for 4-weeks' severance pay, and other consideration, if plaintiff released it from all claims she may have had against it.

32.     Plaintiff did not sign this Agreement.

33.     Attached to the Separation Agreement was a document titled "Exhibit A" which indicated that plaintiff was being terminated as part of a reduction in force.

34.     Per the Separation Agreement, plaintiff was the only person subjected to the alleged reduction in force.

35.     Plaintiff does not believe that she was terminated due to a bona fide reduction in force.

36.     Instead, plaintiff believes, and therefore avers, that she was terminated because of her race, sex, national origin and/or color and because plaintiff had on more than one occasion complained about Quest's unlawful and discriminatory policies and practices relating thereto.

37.     Plaintiff believes on, and therefore avers, that defendants' treatment of her during portions of her employment constituted an unlawfully hostile work environment, and that her termination was also the result retaliation arising out of her complaints concerning same.

38.     More specifically, as concerns plaintiff's claim of retaliation, in June 2014, plaintiff spoke directly with Pearl Simon, plaintiff's HR representative, and complained that she was being subjected to unfair treatment because of illegal discrimination being carried out by

6

Terry Burke and/or Quest's "Commercial Team," and with the tacit or express approval of Quest.

39. One of the main features of the unlawful and discriminatory practices to which plaintiff was subjected during plaintiff's employment with Quest, and later Quintiles and/or Q2 Solutions, was the repeated and ongoing policy of excluding her from professional interactions with members of plaintiff's profession, clients and Quest colleagues.

40. More specifically, plaintiff was during plaintiff's employment routinely excluded from attending client meetings at which plaintiff should have been present, from making presentations on behalf of Quest, and later Quintiles and/or Q2 Solutions, at professional conferences and from performing tasks which were within the ambit of her job responsibilities.

41. Moreover, Quest, and later Quintiles and/or Q2 Solutions, made it a practice to consistently exclude plaintiff from participating in telephone calls with clients; on more than one occasion, plaintiff was present during a conference call when the leader of the call on Quest and/or Quintiles' side introduced everyone in the room, including plaintiff's subordinates, but did not introduce her.

42. This was a subtle (but obvious) way of minimizing and marginalizing plaintiff, which made her feel like an outcast and pariah.

43. Additional discriminatory practices included being publicly treated as inferior to plaintiff's subordinates when it came to the day-to-day operations of Quest, having plaintiff's job title and/or responsibilities reduced, eliminated and/or distributed to plaintiff's subordinate(s), having plaintiff's requests for support in disciplining plaintiff's subordinate(s) rejected or ignored and being subjected to other disparate, unfair, exclusionary, demeaning treatment that plaintiff believes, and therefore avers, was inconsistent with the express and/or implied terms

7

and conditions of plaintiff's employment, and with the Quest's polices, practices, rules and procedures.

44.     As noted above, plaintiff did beginning in June 2014 complain to Pearl Simon, plaintiff's HR representative, that plaintiff was being treated in an unlawfully discriminatory matter, and sought an investigation into plaintiff's complaints.

45.     However, as far as plaintiff knows, Quest at no time conducted any sort of meaningful investigation into plaintiff's allegations.

46.     After plaintiff registered her initial complaint of discrimination with Ms. Simon in June 2014, plaintiff did not observe any change in the way she was being treated and, in fact, plaintiff thereafter observed that Quest's' exclusionary and disparate practices where plaintiff was concerned continued in an unabated, ongoing, continual basis, and in fact increased in their scope and impact.

47.     Defendants never provided plaintiff with a sensible explanation as to why plaintiff's ordinary job duties were from time to time assigned to other employees (who were different from her in terms of their sex, race, national origin and/or color) with less experience, job tenure, education and/or professional licenses, degrees, accreditations and/or credentials.

48.     During her employment, plaintiff also learned facts that made her believe that there existed a pattern or unlawful discriminatory practices within Quest, most often directed towards women, and in one instance directed against another female ("BD") who, plaintiff believes, and therefore avers, was, like her, identified as being "a foreigner" because of her place of birth, accent and obviously Asian features.

49.     As far as plaintiff knows, Quest's clients liked her and, plaintiff believes and therefore avers, defendants sought to exclude her from client interactions because plaintiff was

8

an obviously African and/or African-American woman from a visual perspective, and because plaintiff speaks English with a relatively heavy accent.

50. Dr. Fikry and Terry Burke were perhaps the primary members of management that plaintiff believes, and therefore avers, acted in an unlawfully discriminatory manner where plaintiff was concerned, and where other women and/or minority employees were concerned as well.

51. At one point, in or around December 2014, plaintiff received a call from a recruiter who told her that, incident to a merger or joint venture between Quintiles and Quest, Q2 was looking for a person to fill a position that appeared to be just like the one then-being performed by plaintiff.

52. The recruiter told plaintiff that the person to be hired would be placed in a role that primarily involved interaction with customers.

53. Plaintiff believes, and therefore avers, that the Quest sought to terminate her in whole or in part because of the overall animus towards female minorities exhibited by Dr. Fikry and Terry Burke, and because defendants did not want a dark-skinned, obviously African and/or African-American woman with a relatively thick accent to represent them when it came to interactions with its customers, the public generally, and members of the scientific community.

54. Finally, Plaintiff believes, and therefore avers that, following plaintiff's termination, some, most or nearly all of plaintiff's job duties and/or responsibilities were, as far as plaintiff knows, assigned primarily to one or more persons who were not of African descent and/or were not African-American and/or were of a different race and/or a different sex than plaintiff.

**COUNT I**
**PLAINTIFF V. QUEST DIAGNOSTICS, INC.**
<u>Violation of Title VII – Discrimination Based Upon Race/Illegal Retaliation</u>

55.     Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

56.     At all times material hereto, plaintiff had the physical characteristics, ancestry, historical affiliation, or shared culture commonly identified as possessed by "black" persons, "negroes," "Africans and/or "African Americans," and was during her employment with defendant therefore entitled to protection from discrimination based upon her race.

57.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

58.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

59.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

60.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race, she was throughout her employment with defendant subjected to a hostile work environment.

61.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race, she was selected for termination.

10

62.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual, and that the real reason for her termination was her race.

63.     Plaintiff on more than one occasion registered complaints with her supervisor(s), manager(s) and/or Quest's HR representative(s) that she was being treated unfairly, disparately, punitively and/or unlawfully because of her race, and sought an investigation into said complaints.

64.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

65.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendants' policies and practices.

66.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

67.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants subjected to an unlawful hostile work environment.

68.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant subjected to a hostile work environment.

11

69.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was selected for termination.

70.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove, that defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual and that the real reason for her termination was her complaints.

71.     Plaintiff believes that defendant engaged in unlawful retaliation proscribed by Title VII.

72.     Plaintiff believes that defendant at all times knew that depriving an individual of fair treatment, opportunity for advancement and/or employment violated Title VII's proscription of race discrimination and/or retaliation undertaken in response to protected activities such as those undertaken by plaintiff.

73.     Plaintiff believes that defendant at all times knew that their actions constituted unlawful racial discrimination and/or termination, but that defendant willfully and intentionally continued to engage in such misconduct.

74.     Defendant's discriminatory philosophies, practices, policies, and conduct were willful, wanton and intentional, were carried out with malice and reckless disregard of federal civil rights laws and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended and/or Title VII of the Civil Rights Act of 1991, 42 U.S.C. §1981, in numerous respects.

75.     Because of defendant's unlawful discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, humiliation, loss of reputation and great emotional distress, as well as other damages that will be proved at trial in this matter.

12

WHEREFORE, plaintiff, Onikepe Adegbola, M.D., demands judgment in her favor and against defendant, Quest Diagnostics, Inc., in an amount sufficient to compensate her for lost past and future wages, compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as Your Honorable Court deems just and appropriate.

## COUNT II
### PLAINTIFF V. ALL DEFENDANTS
#### Violation of 42 U.S.C §1981 –
#### Discrimination Based Upon Race and/or Ethnicity/Illegal Retaliation

76.     Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

77.     At all times material hereto, plaintiff had the physical characteristics, ancestry, historical affiliation, or shared culture commonly identified as possessed by "black" persons, "negroes," "Africans and/or "African Americans," and was during her employment with defendants therefore entitled to protection from discrimination based upon her race and/or ethnicity.

78.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race and/or ethnicity, she was throughout her employment with defendants treated differently and less favorable that similarly-situated and/or less qualified colleagues.

79.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race and/or ethnicity, she was throughout her employment with defendants deprived of opportunities for advancement to which she was entitled to pursuant to defendants' policies and practices.

80.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants subjected to an unlawful hostile work environment.

13

81.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race and/or ethnicity, she was throughout her employment with defendants deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

82.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race and/or ethnicity, she was throughout her employment with defendants subjected to a hostile work environment.

83.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her race and/or ethnicity, she was selected for termination.

84.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, defendants' representation that the termination of her employment was the result of a reduction in force was a pretextual, and that the real reason for her termination was her race and/or ethnicity.

85.    Plaintiff on more than one occasion registered complaints with her supervisor(s), manager(s) and/or Quest's HR representative(s) that she was being treated unfairly, disparately, punitively and/or unlawfully because of her race and/or ethnicity, and sought an investigation into said complaints.

86.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants treated differently and less favorable that similarly-situated and/or less qualified colleagues.

87.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants deprived of opportunities for advancement to which she was entitled to pursuant to defendants' policies and practices.

14

88.   Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

89.   Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants subjected to a hostile work environment.

90.   Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was selected for termination.

91.   Plaintiff believes and avers that, as set forth in the factual statements hereinabove, that defendants' representation that the termination of her employment was the result of a reduction in force was a pretextual and that the real reason for her termination was her complaints.

92.   Plaintiff believes that defendants engaged in unlawful retaliation proscribed by Title VII.

93.   Plaintiff believes that defendants at all times knew that depriving an individual of fair treatment, opportunity for advancement and/or employment violated Title VII's proscription of race and/or ethnicity discrimination and/or retaliation undertaken in response to protected activities such as those undertaken by plaintiff.

94.   Plaintiff believes that defendants at all times knew that their actions constituted unlawful racial discrimination and/or termination, but that defendants willfully and intentionally continued to engage in such misconduct.

95.   Defendants' discriminatory philosophies, practices, policies, and conduct were willful, wanton and intentional, were carried out with malice and reckless disregard of federal

15

civil rights laws and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended and/or Title VII of the Civil Rights Act of 1991, 42 U.S.C. §1981, in numerous respects.

96.     Because of defendants' unlawful discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, humiliation, loss of reputation and great emotional distress, as well as other damages that will be proved at trial in this matter.

WHEREFORE, plaintiff, Onikepe Adegbola, M.D., demands judgment in her favor and against defendants, Quest Diagnostics, Inc., QuintilesIMS, formerly known as Quintiles, Q2 Solutions, a Quintiles Quest Joint Venture, Terry Burke and Christopher Fikry, M.D., in an amount sufficient to compensate her for lost past and future wages, compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as Your Honorable Court deems just and appropriate.

## COUNT III
## PLAINTIFF V. QUEST DIAGNOSTICS, INC.
### Violation of Title VII – Discrimination Based Upon Color/Illegal Retaliation

97.     Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

98.     Plaintiff was at all times material hereto "black," having very dark skin pigmentation, and was during her employment with defendant therefore entitled to protection from discrimination based upon her skin color.

99.     Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her skin color, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

16

100. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her skin color, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

101. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her skin color, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

102. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants subjected to an unlawful hostile work environment.

103. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her skin color, she was throughout her employment with defendant subjected to a hostile work environment.

104. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her skin color, she was selected for termination.

105. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual, and that the real reason for her termination was her skin color.

106. Plaintiff on more than one occasion registered complaints with her supervisor(s), manager(s) and/or Quest's HR representative(s) that she was being treated unfairly, disparately, punitively and/or unlawfully because of her skin color, and sought an investigation into said complaints.

17

107. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

108. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

109. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

110. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant subjected to a hostile work environment.

111. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was selected for termination.

112. Plaintiff believes and avers that, as set forth in the factual statements hereinabove, that defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual and that the real reason for her termination was her complaints.

113. Plaintiff believes that defendant engaged in unlawful retaliation proscribed by Title VII.

114. Plaintiff believes that defendant at all times knew that depriving an individual of fair treatment, opportunity for advancement and/or employment violated Title VII's proscription

18

of skin color discrimination and/or retaliation undertaken in response to protected activities such as those undertaken by plaintiff.

115.    Plaintiff believes that defendant at all times knew that their actions constituted unlawful racial discrimination and/or termination, but that defendant willfully and intentionally continued to engage in such misconduct.

116.    Defendant's discriminatory philosophies, practices, policies, and conduct were willful, wanton and intentional, were carried out with malice and reckless disregard of federal civil rights laws and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended and/or Title VII of the Civil Rights Act of 1991, 42 U.S.C. §1981, in numerous respects.

117.    Because of defendant's unlawful discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, humiliation, loss of reputation and great emotional distress, as well as other damages that will be proved at trial in this matter.

WHEREFORE, plaintiff, Onikepe Adegbola, M.D., demands judgment in her favor and against defendant, Quest Diagnostics, Inc., in an amount sufficient to compensate her for lost past and future wages, compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as Your Honorable Court deems just and appropriate.

## COUNT IV
## PLAINTIFF V. QUEST DIAGNOSTICS, INC.
### Violation of Title VII – Discrimination Based Upon Sex/Illegal Retaliation

118.    Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

119.    Plaintiff is a woman, and was during her employment with defendant therefore entitled to protection from discrimination based upon her sex.

19

120.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her sex, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

121.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her sex, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

122.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her sex, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

123.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her sex, she was throughout her employment with defendant subjected to a hostile work environment.

124.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her sex, she was selected for termination.

125.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual, and that the real reason for her termination was her sex.

126.    Plaintiff on more than one occasion registered complaints with her supervisor(s), manager(s) and/or Quest's HR representative(s) that she was being treated unfairly, disparately, punitively and/or unlawfully because of her sex, and sought an investigation into said complaints.

20

127.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

128.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

129.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

130.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant subjected to a hostile work environment.

131.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was selected for termination.

132.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove, that defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual and that the real reason for her termination was her complaints.

133.    Plaintiff believes that defendant engaged in unlawful retaliation proscribed by Title VII.

134.    Plaintiff believes that defendant at all times knew that depriving an individual of fair treatment, opportunity for advancement and/or employment violated Title VII's proscription

21

of sex discrimination and/or retaliation undertaken in response to protected activities such as those undertaken by plaintiff.

135.    Plaintiff believes that defendant at all times knew that their actions constituted unlawful racial discrimination and/or termination, but that defendant willfully and intentionally continued to engage in such misconduct.

136.    Defendant's discriminatory philosophies, practices, policies, and conduct were willful, wanton and intentional, were carried out with malice and reckless disregard of federal civil rights laws and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended and/or Title VII of the Civil Rights Act of 1991, 42 U.S.C. §1981, in numerous respects.

137.    Because of defendant's unlawful discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, humiliation, loss of reputation and great emotional distress, as well as other damages that will be proved at trial in this matter.

WHEREFORE, plaintiff, Onikepe Adegbola, M.D., demands judgment in her favor and against defendant, Quest Diagnostics, Inc., in an amount sufficient to compensate her for lost past and future wages, compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as Your Honorable Court deems just and appropriate.

## COUNT V
## PLAINTIFF V. QUEST DIAGNOSTICS, INC.
### Violation of Title VII – Discrimination Based Upon National Origin/Illegal Retaliation

138.    Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

22

139.    Plaintiff who was born, raised and educated in Nigeria, spoke English with a heavy accent, and was during her employment with defendant therefore entitled to protection from discrimination based upon her national origin.

140.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her national origin, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

141.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her national origin, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

142.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her national origin, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

143.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her national origin, she was throughout her employment with defendant subjected to a hostile work environment.

144.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her national origin, she was selected for termination.

145.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual, and that the real reason for her termination was her national origin.

146.    Plaintiff on more than one occasion registered complaints with her supervisor(s), manager(s) and/or Quest's HR representative(s) that she was being treated unfairly, disparately, punitively and/or unlawfully because of her national origin, and sought an investigation into said complaints.

147.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant treated differently and less favorable that similarly-situated and/or less qualified colleagues.

148.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement to which she was entitled to pursuant to defendant's policies and practices.

149.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

150.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendant subjected to a hostile work environment.

151.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was selected for termination.

152.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove, that defendant's representation that the termination of her employment was the result of a reduction in force was a pretextual and that the real reason for her termination was her complaints.

24

153.    Plaintiff believes that defendant engaged in unlawful retaliation proscribed by Title VII.

154.    Plaintiff believes that defendant at all times knew that depriving an individual of fair treatment, opportunity for advancement and/or employment violated Title VII's proscription of national origin discrimination and/or retaliation undertaken in response to protected activities such as those undertaken by plaintiff.

155.    Plaintiff believes that defendant at all times knew that their actions constituted unlawful racial discrimination and/or termination, but that defendant willfully and intentionally continued to engage in such misconduct.

156.    Defendant's discriminatory philosophies, practices, policies, and conduct were willful, wanton and intentional, were carried out with malice and reckless disregard of federal civil rights laws and violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended and/or Title VII of the Civil Rights Act of 1991, 42 U.S.C. §1981, in numerous respects.

157.    Because of defendant's unlawful discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, humiliation, loss of reputation and great emotional distress, as well as other damages that will be proved at trial in this matter.

WHEREFORE, plaintiff, Onikepe Adegbola, M.D., demands judgment in her favor and against defendant, Quest Diagnostics, Inc., QuintilesIMS, formerly known as Quintiles and Q2 Solutions, a Quintiles Quest Joint Venture, in an amount sufficient to compensate her for lost past and future wages, compensatory damages, punitive damages, attorneys' fees; costs, and such other relief as Your Honorable Court deems just and appropriate.

**COUNT VI**

25

**PLAINTIFF V. ALL DEFENDANTS**
**Violation of PHRA – Discrimination Based Upon Race, Color, National Origin and/or Sex/Illegal Retaliation**

158. Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

159. Plaintiff, a woman who was born, raised and educated in Nigeria and spoke English with a heavy accent.

160. At all times material hereto, plaintiff had the physical characteristics, ancestry, historical affiliation, or shared culture commonly identified as possessed by "black" persons, "negroes," "Africans and/or "African Americans," and was during her employment with defendant therefore entitled to protection from discrimination based upon her race.

161. During her employment with defendants, plaintiff was entitled to protection from discrimination based upon her race, color, national origin and/or sex.

162. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her color, race, national origin and/or sex, she was throughout her employment with defendants treated differently and less favorable that similarly-situated and/or less qualified colleagues.

163. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her color, race, national origin and/or sex, she was throughout her employment with defendants deprived of opportunities for advancement to which she was entitled to pursuant to defendants' policies and practices.

164. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her color, race, national origin and/or sex, she was throughout her employment with defendants deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

26

165.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her color, race, national origin and/or sex, she was throughout her employment with defendants subjected to a hostile work environment.

166.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of her color, race, national origin and/or sex, she was selected for termination.

167.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, defendants' representation that the termination of her employment was the result of a reduction in force was a pretextual, and that the real reason for her termination was her color, race, national origin and/or sex.

168.    Plaintiff on more than one occasion registered complaints with her supervisor(s), manager(s) and/or Quest's HR representative(s) that she was being treated unfairly, disparately, punitively and/or unlawfully because of her color, race, national origin and/or sex, and sought an investigation into said complaints.

169.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants treated differently and less favorable that similarly-situated and/or less qualified colleagues.

170.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants subjected to an unlawful hostile work environment.

171.    Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants deprived of opportunities for advancement to which she was entitled to pursuant to defendants' policies and practices.

27

172. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants deprived of opportunities for advancement which were accorded to similarly-situated and/or less qualified colleagues.

173. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was throughout her employment with defendants subjected to a hostile work environment.

174. Plaintiff believes and avers that, as set forth in the factual statements hereinabove that, because of said complaints, she was selected for termination.

175. Plaintiff believes and avers that, as set forth in the factual statements hereinabove, that defendants' representation that the termination of her employment was the result of a reduction in force was a pretextual and that the real reason for her termination was her complaints.

176. Plaintiff believes that defendants engaged in unlawful retaliation proscribed by the PHRA.

177. Plaintiff believes that defendants at all times knew that depriving an individual of fair treatment, opportunity for advancement and/or employment violated PHRA's proscription of discrimination based upon race, color, sex and/or national origin, and/or retaliation undertaken in response to protected activities such as those undertaken by plaintiff.

178. Plaintiff believes that defendants at all times knew that their actions constituted unlawful racial discrimination and/or illegal retaliation, but that defendants willfully and intentionally continued to engage in such misconduct.

179. Defendant's discriminatory philosophies, practices, policies, and conduct were willful, wanton and intentional, were carried out with malice and reckless disregard of federal

28

civil rights laws and violated the Pennsylvania Human Relations, Act of 1955, P.L. 744, No. 222, as amended June 25, 1997 by Act 34 of 1997, 43 P.S. §§ 951-963, in numerous respects.

180.   Because of defendant's unlawful discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, humiliation, loss of reputation and great emotional distress, as well as other damages that will be proved at trial in this matter.

WHEREFORE, plaintiff, Onikepe Adegbola, M.D., demands judgment in her favor and against defendants, Quest Diagnostics, Inc., QuintilesIMS, formerly known as Quintiles, Q2 Solutions, a Quintiles Quest Joint Venture, Terry Burke and Christopher Fikry, M.D., in an amount sufficient to compensate her for lost past and future wages, compensatory damages, attorneys' fees, costs, and such other relief as Your Honorable Court deems just and appropriate.

**GALLAGHER LAW GROUP, PC**

BY:   **/s/ John A. Gallagher**
JOHN A. GALLAGHER, Esquire
Counsel for Plaintiff
Atty. ID No. 61914
610-647-5027
610-647-5024 (FAX)
jag@johnagallagher.com

29



JS 44

*(handwritten: JCJ)*

*(handwritten: 17-Q-2918)*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

*(handwritten: 17    2918)*

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Onikepe Adegbola, M.D., Ph. D | Quest Diagnostics, Inc. et al. |

| **(b)** County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Gallagher Law Group, PC, 5 Great Valley Parkway, Suite 210 Malvern, PA 19355 | Michael J. Torchia, Esquire, Semanoff Ornsby, 2617 Huntingdon Pike, Huntingdon Valley, PA 19006 215 887 0200 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 2000e et seq

Brief description of cause:
Discrimination/Retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| *(handwritten)* 28 2017 | *(signature)* |

*(handwritten stamp: JUN 12 2017)*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

APPENDIX I



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

### CASE MANAGEMENT TRACK DESIGNATION FORM

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ONIKEPE ADEGBOLA, M.D., Ph.D | 17  2918 |
| Plaintiff | : CIVIL ACTION NO.: |
| v. | |
| QUEST DIAGNOSTICS, INC. | : JURY TRIAL DEMANDED |
| and | |
| QUINTILESIMS, formerly known as QUINTILES | |
| and | |
| Q2 SOLUTIONS, a QUINTILES QUEST JOINT VENTURE | |
| and | |
| TERRY BURKE | |
| and | |
| CHRISTOPHER FIKRY, M.D. | |
| Defendants | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( x )

| **Date** | **Attorney-at-law** | **Attorney for** |
|---|---|---|
| 01/23/15 | John A. Gallagher, Esq. | Plaintiff |
| **Telephone** | **FAX Number** | **E-Mail Address** |
| 610-647-5027 | 610-647-5024 | jag@johnagallagher.com |

JUN 12 2017